UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

PHILLIP RANDALL TILLIE #636229,                    Case No. 2:23-cv-112

                Plaintiff,                    Hon. Robert J. Jonker
                                                   U.S. District Judge

    v.

UNKNOWN MILLER, et al.,

                Defendants.

_____/

## REPORT AND RECOMMENDATION

### I. Introduction

This Report and Recommendation (R. & R.) addresses the Defendants' motion for summary judgment due to Plaintiff's failure to exhaust administrative remedies against them.  (ECF No. 21.)

Plaintiff – State prisoner Phillip Randall Tillie – filed an unverified complaint under 42 U.S.C. § 1983 alleging that Defendants – Chippewa Correctional Facility (URF) Corrections Officers (COs) Brendan Miller and Jacob Casey – violated his Eighth Amendment rights.  (ECF No. 1.)  The events about which Tillie complains occurred at URF; however, Tillie is presently incarcerated at Alger Correctional Facility in Munising, Michigan.  (ECF No. 14.)

On August 9, 2024, the Court issued a screening opinion.  (*Id.*)  In the opinion, the Court dismissed Tillie's official capacity claims against Defendants Miller and Casey.  (*Id.*)  Tillie's individual capacity claims against the Defendants remain.  (*Id.*)

In his complaint, Tillie states that at approximately 11:00 pm on December 2, 2020, he stopped CO Miller on his rounds and told him that he was "in pain and urinating blood." (ECF No. 1, PageID.3.)  Before continuing on his rounds, Miller allegedly responded, "[T]hat's not my concern, that's yours . . . [Y]our [sic] the one not eating." (*Id.*)  Tillie says CO Casey completed the next three rounds on the Unit. During those rounds, Tillie asserts he knocked repeatedly on his cell door and presented his medical concerns to Casey. (*Id.*)  Casey allegedly ignored Tillie until his final pass through the Unit, at which time he asked Tillie, "Why you want just fill out a kite?" (*Id.*)  Tillie explained he was experiencing a medical emergency and that he "could barely stand." (*Id.*)  Neither Miller nor Casey contacted medical staff regarding Tillie's concerns. (*Id.*)

Roughly ten hours later, on December 3, 2020, Tillie expressed his concerns to someone on First Shift, at which time he was sent to healthcare. (*Id.*)  During his examination, Tillie said his urine contained blood.  The nurse conducting the examination told Tillie that he would be sent to the hospital.  However, Tillie says he was later informed that he would not be transferred because "the hospital was full and only [accepting] near death patients or pandemic patients due to Covid." (*Id.*) Tillie says he then received "[an] emergency I.V. of fluid." (*Id.*)

On October 16, 2024, Defendants Miller and Casey moved for summary judgment on the basis of exhaustion. (ECF No. 21.)  Defendants argue that Tillie did not exhaust his administrative remedies by naming Miller or Casey in a properly

exhausted grievance through Step III of the Michigan Department of Corrections (MDOC) grievance process.  (*Id.*, PageID.80.)

In the opinion of the undersigned, the Defendants have demonstrated there is no genuine issue of material fact as to whether Tillie properly exhausted his administrative remedies.  Therefore, it is respectfully recommended that the Court grant the motion for summary judgment on the basis of exhaustion by COs Miller and Casey.

## II.  Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

---

[1]    The Seventh Amendment does not always require courts to submit factual disputes about exhaustion to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).  If the factual disputes about exhaustion do not overlap with the merits of the plaintiff's substantive claims, then the court may conduct a bench trial to resolve the exhaustion issue. *Richards v. Perttu*, 96 F.4th 911, 923 (6th Cir. 2024), *cert. granted*, No. 23-1324, 2024 WL 4394132 (U.S. Oct. 4, 2024).  In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Willey*, 789 F.3d at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence.").

251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A

4

prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that

5

clarifies the contours of the controversy." *Id.* When institutions provide adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, \*5 (W.D. Mich., Nov. 1, 2007).

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 (effective on March 18, 2019). According to the Policy Directive inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten

business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶ DD. The respondent at Step II is designated by the policy. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶ HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590−91 (6th Cir. 2017).[2]

## IV. Analysis

### A. Timeliness of Step II Grievance Appeal

Defendants argue that Tillie did not exhaust any of the claims asserted in the complaint against COs Miller or Casey. (ECF No. 22, PageID.86.) Defendants acknowledge that Tillie pursued one relevant grievance through Step III, <u>URF-20-12-</u>

---

[2]    In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization did not grieve the claim that the doctor erred by not prescribing Ranexa.

3081-28E, but assert that Tillie failed to exhaust that grievance because it was rejected at Step II and the rejection was upheld Step III.  (*Id.*, PageID.87.)  Tillie argues in response that he properly exhausted administrative remedies available to him.  (ECF No. 23, PageID.136.)  Defendants failed to reply.

Though Tillie pursued three grievances to Step III, only grievance URF-20-12-3081-28E (URF-3081) discusses claims related to those in this suit.  (ECF No. 22-3, PageID.124–28.)  This grievance focuses on both Defendant Miller and Defendant Casey at Step I and Step II.

At Step I of this grievance, Tillie asserted that Miller and Casey refused to contact health care staff after he reported "pain and urinating blood."  (*Id.*, PageID.127.)  The contents of Tillie's Step I grievance are shown below:



(*Id.*)

Grievance URF-3081 was denied at Step I on December 17, 2020.  (*Id.*, PageID.128.)  The investigation summary stated that Nurse Duncan saw Tillie in health services on December 1, 2020 and evaluated Tillie for stomach pain and blood in his urine.  (*Id.*)  At that time, Nurse Duncan discovered that Tillie was on a hunger strike and had been for several days prior to December 1, 2020.  (*Id.*)  Tillie returned to health services twice on December 2, 2020, for the same symptoms and advised Nurse Duncan that he had exercised "very hard" that day.  (*Id.*)  Nurse Duncan explained that exercising while "malnourished" can result in both stomach pain and blood in one's urine.  (*Id.*)  The investigator, Sergeant Strum, also found that Defendant Miller could not recall a prisoner asking to see health services on the night in question and would have called health services if someone had asked him to do so. (*Id.*)

The Step I response was returned to Tillie on December 18, 2020.  (*Id.*, PageID.127.)  Tillie was informed that if he decided to appeal the Step I grievance response, that appeal was due by January 8, 2021, or it would be considered untimely. (*Id.*, PageID.125.)

> **INVESTIGATION SUMMARY:**
> On 12/11/2020 I interviewed RN. Duncan and he stated that prisoner Tillie was seen on 12/1/2020 to be evaluated for stomach pain and blood in his urine, and it was discovered that Tillie was on a hunger strike and had been for several days prior to 12/1/2020. Tillie was seen by Health Care twice on 12/2/2020 for the same symptoms. Following HIPPA regulations,  RN. Duncan could not tell me what treatment was rendered to prisoner Tillie.  RN. Duncan said that Tillie told H/S that he had excersised very hard that day which, RN. Duncan states, would explain the blood in the urine.  RN. Duncan explained to me the effects of such activity while being malnurished and the results on the body it can cause, one being stomach pain and two, blood in the urine. Tillie was removed from hunger strike status on 12/5/2020.  On 12/11/2020 I spoke to Officer Miller who was working in the unit that night and he stated that he did not recall anyone asking to see Health Care and would have called Health Service if someone had asked.  On 12/17/20 I spoke to prisoner Tillie and he had nothing to add to this grievance.

(*Id.*, PageID.128 (Investigation Summary regarding Grievance URF-3081).)

INSTRUCTIONS: THIS FORM IS ONLY TO BE USED TO APPEAL A STEP I GRIEVANCE.
The white copy of the Prisoner/Parolee Grievance Form CSJ-247A (or the goldenrod copy if you have not been provided
with a Step I response in a timely manner) MUST be attached to the white copy of this form if you appeal it at both Step
II and Step III.

If you should decide to appeal the Step I grievance response to Step II, your appeal should be directed to: _URF_
_Warden's Office_ by _1-8-21_. If it is not submitted by this date, it will be considered terminated.
_untimely_

FEB 11 2021
Office of Legal Affairs

(*Id.*, PageID.125 (Instructions for Appeal Step I grievance response).)

Tillie's dated his Step II appeal on December 30, 2020.  (*Id.*)  The date stamp
on the Step II appeal, however, indicates that it was received by the Step II
respondent on January 20, 2020.  (*Id.*)

Warden Horton rejected Tillie's Step II appeal as untimely on January 27,
2021, noting that per MDOC Policy Directive (PD) 03.02.130, Tillie's completed Step
II appeal had to be submitted to the Grievance Coordinator within ten business days
of receiving the Step I response or within ten business days of the due date for the
Step I response if none is received.  (*Id.*)  Horton explained that the grievance "was
received by the Step II Coordinator on 1/20/2021. The due date to the coordinator was
on 1/08/2021."  (*Id.*)

The Step II rejection was returned to Tillie on February 1, 2021.  (*Id.*,
PageID.125.)  Tillie's Step II appeal and his subsequent rejection are shown below:

| Name (Print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| Phillip Tillie | 636229 | URF | R229 | 12-2-20 | 12-30-20 |

**STEP II — Reason for Appeal** I was never Seen on 12-1-20 for Blood in my Urine, I was never seen by health care for Stomach Pain, I didn't Urinate blood Until 12-2-20 at Approximately 11:00pm (3rd shift) On 12-3-20 is when I was seen by health care for being on A hunger strike, Also that's the only time I was seen for Urinating blood, Because it was the only time I Urinated Blood, On 12-3-20 I was given A I.V. of Fluid. It's doesn't Matter if I was on hunger strike, I requested health care and I was denied. All of the facts Used in the Decision Summary Are False. This is not about hunger Striking. This is about being Denied healthcare since I requested it on 12-2-20 11:00pm. Issue was not resolved At Step One, Either health care denied Me or Miller's Casey didn't Call.

**STEP II — Response**

See Attached

Date Received by Step II Respondent:

JAN 2 0 2021

(*Id.* (Tillie's Step II appeal).)

Grievance **URF 2012 3081 17Z** has been reviewed.

The Step II Respondent is rejecting this grievance in accordance with PD 03.02.130, Prisoner/Parolee Grievances. The completed Step II form must be submitted to the Step II Grievance Coordinator within 10 business days of receiving the Step I response or if no response was received, within 10 business days of the due date of the Step I response, including extensions.

**This grievance was received by the Step II Coordinator on 1/20/2021. The due date to the coordinator was on 1/08/2021.**

At Step II the grievance identifier code has been changed to reflect the **untimely filing.** Any future reference to this grievance should utilize the new identifier: **URF 2012 3081 28E**

Connie Horton, Warden

1/27/21

Date

(*Id.*, PageID.126 (Warden Horton's Step II Rejection).)

Tillie's Step III appeal was received on February 11, 2021. (*Id.*, PageID.125.) Tillie stated that "[i]ssue was not resolved at step 1," and that the grievance was properly submitted on "12-30-20." (*Id.*) Tillie did not directly mention either Defendant Miller or Defendant Casey in his Step III appeal. (*Id.*) On review of the Step III appeal, Richard Russell of the Office of Legal Affairs stated the appeal "has been reviewed and considered" and the "rejection is upheld." (*Id.*, PageID.124.)

Tillie's Step III appeal and the Step III Decision are shown below:



CONNIE HERON, WARDEN    C Heron    1/27/21    Date Returned to Grievant: 2-1-21

Respondent's Name (Print)    Respondent's Signature    Date

STEP III — Reason for Appeal  Issue was not resolved at step 1. [crossed out] Warden Connie Horton rejected my grievance under false Pretense. My grievance was submitted on 12-30-20. I wrote a grievance on the Warden, Now Connie Horton is retaliating by Rejecting my grievance. She's also Attempting to chill/ hinder My 1rt Amendment Right to Petition the Court for Redress. There are 2 Identifiers URF-20-12-3081-17Z & URF-20-12-3081-28E

(*Id.*, PageID.125 (Tillie's Step III appeal).)

## STEP III GRIEVANCE DECISION

Rec #:    124156
28E

To Prisoner:    Tillie    #: 636229
Current Facility:    URF
Grievance Identifier:    URF-20-12-3081-28E
Step III Received:    2/11/2021

Your Step III appeal has been reviewed and considered by the Grievance Section of the Office of Legal Affairs in accordance with PD 03.02.130, "Prisoner/Parolee Grievances".

## THE REJECTION IS UPHELD.

THIS DECISION CANNOT BE APPEALED WITHIN THE DEPARTMENT.    MAY 0 3 2021

(*Id.*, PageID.124 (Step III Appeal Decision).)

The Supreme Court held in *Woodford* that the PLRA exhaustion requirement requires "proper exhaustion." "548 U.S. at 92−93. "Proper exhaustion" means that the plaintiff complied with the administrative agency's deadlines and "critical procedural rules," such as time limits for filing grievances. *Id.* at 90−95. MDOC policy provides that a grievance shall be rejected if filed in an untimely manner. PD 03.02.130 ¶ (J)(5). Grievances are considered filed on the date they are received by the Department and must be stamped as such. *Id.*, at ¶ (T). To be considered

timely, Step II appeals must be received by the Grievance Coordinator within ten business days after the grievant receives a Step I response or, if no response is received, within ten business days after the date the response is due. *Id.*, at ¶ (EE).

Tillie's Step I grievance response was returned to him on December 18, 2020. (ECF No. 22-3, PageID.127.) Tillie was informed that his Step II appeal was due by January 8, 2021. (*Id.*, PageID.125.) Although Tillie dated his Step II appeal December 30, 2020, well before the Step II deadline, his appeal was not received until January 20, 2021. *Id.* Because the Step II appeal was received on January 20, 2021, it is considered filed on that date. (ECF No. 22-2, PageID.95 (PD 03.02.130 ¶ (T) (stating that "[g]rievances and grievance appeals at all steps shall be considered filed on the date received by the Department")).) Thus, Tillie's Step II appeal was untimely filed and was properly rejected. (*Id.*, PageID.93 (PD 03.02.130 ¶ (J)(5)).)

Tillie includes an affidavit in which he attests that he placed his Step II appeal in the institutional mail on December 30, 2020. (ECF No. 23-3, PageID.143.) In the opinion of the undersigned, Tillie's attestation on this issue is insufficient to create a genuine issue of material fact regarding (1) the rejection of his Step II appeal as untimely and (2) the MDOC's decision to uphold that rejection at Step III. Paragraph T of PD 03.02.130 also provides that "[a]ll grievances and appeals shall be date stamped upon receipt." (ECF No. 22-2, PageID.95.) And Paragraph EE requires the Grievance Coordinator to track each Step II appeal using "a computerized grievance tracking system." (*Id.*, PageID.97.) Tillie's affidavit does not provide an explanation

for how or why the basic procedural requirements in Paragraph T and EE were not followed in this case.

In the opinion of the undersigned, the Defendants have successfully demonstrated there exists no genuine dispute of material fact as to whether Tillie failed to properly exhaust his administrative remedies.

### B. Thwarting

In his unsworn response in opposition, Tillie alternatively argues that the Grievance Coordinator and Warden thwarted his ability to properly exhaust his administrative remedies. (ECF No. 23, PageID.135.) Defendants made no reply contesting this assertion.

Tillie asserts that the Grievance Coordinator "made the grievance procedure unavailable when he rejected [Tillie's] Step II grievance as untimely." (*Id.*, PageID.134.) Tillie states that he "clearly met the Jan 8, 2021 [filing] deadline" for his Step II appeal because he "submitted his Step II Appeal on December 20, 2020 well before the Jan 8, 2021 Deadline." (*Id.*) Tillie says that "Warden Connie Hurton was rejecting [his] grievance in retaliation to [his] previously filed grievance on her and that the Warden was impeding/hindering [his] attempts to petition the government for redress." (*Id.*) Tillie argues that the Warden did so by "prevent[ing him] from using otherwise proper procedure by falsely rejecting [his] Step II grievance appeal for being untimely." (*Id.*, PageID.135.)

One of the purposes of proper exhaustion is to alert prison officials to problems within their facilities. *Nussle*, 534 U.S. at 525. To properly exhaust grievable claims,

15

one must utilize all steps that the agency holds out and do so properly.  *Ngo*, 548 U.S. at 90.  Grievable claims are governed by the administrative process laid out in MDOC P.D. 03.02.130, which requires the grievant to appeal their grievance  from Step I to a Step III appeal to exhaust their claim.  "The Supreme Court has identified three situations in which an administrative procedure is unavailable to prisoners and is therefore not subject to the exhaustion requirement: (1) 'when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) when 'some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it' because it is 'so opaque' or 'so confusing'; and (3) 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Lamb v. Kendrick*, 52 F.4th 286 (6th Cir. 2022) (quoting *Ross*, 578 U.S. 643-44).

In the rare circumstance where a prisoner shows that administrative procedure was unavailable, "he is not automatically absolved from the PLRA's exhaustion requirement." *Lamb*, 52 F.4th at 293 (citing *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015)).  The Sixth Circuit requires inmates to make "affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable." *Lee*, 789 F.3d at 677 (quoting *Napier v. Laurel Cnty.*, 636 F.3d 218, 223 (6th Cir. 2011)).  "When a prisoner makes affirmative efforts to comply but does not succeed, we analyze whether those efforts to exhaust were

sufficient under the circumstances." *Id.* (quoting *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) (internal quotation marks omitted).

In the opinion of the undersigned, Tillie has failed to demonstrate that a genuine issue of material fact exists as to whether or not he was thwarted from exhausting his grievance. Tillie has not shown that the grievance process was unavailable to him. To the contrary, the record shows that Tillie filed a Step I grievance, filed a Step II appeal, and filed a Step III appeal. While Tillie states that the Warden made the grievance process unavailable to him by improperly delaying the filing of his Step II appeal, this constitutes a mere conclusory allegation. Tillie provides no facts to support his bare allegation of retaliation by the Warden. Furthermore, Tillie's allegations of thwarting were first raised in his unverified response. (ECF No. 23.) Unverified responses are not considered evidence that may be evaluated for Rule 56 purposes. *Cooper v. Parker*, No. 2:17-CV-00155, 2019 WL 5273967, at *2 (W.D. Mich. Aug. 29, 2019) (citations omitted), *report and recommendation adopted*, No. 2:17-CV-155, 2019 WL 4686423 (W.D. Mich. Sept. 26, 2019). Thus, Tillie failed to support his claim of thwarting in a manner meeting the Rule 56 requirements.

## V.  Recommendation

In the opinion of the undersigned, the Defendants have demonstrated that there exists no genuine issue of material fact as to whether Tillie properly exhausted his administrative remedies. Therefore, the undersigned respectfully recommends that this Court grant the Defendants' motion to dismiss for summary judgment.

Dated:  March 10, 2025         /s/ *Maarten Vermaat*

                                       MAARTEN VERMAAT
                                       U. S. MAGISTRATE JUDGE

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).